T. H. CLARK AND ANOTHER *vs.* S. S. TOMPKINS AND OTHERS.

The mere belief of the sons and widow of a deceased guardian, that certain Confederate States bonds, found among his effects, were held by him as investments for his wards, is not evidence that the investments were in fact made.

A guardian, who died in 1864, *held* not to have become liable for distributive shares of his wards in the estate of their brother, who died in 1863—the administrator of the deceased brother remaining liable to them, and it not appearing that they had lost by the failure of the guardian to receive the shares.

A widow is entitled in equity, when dower is assigned her; to an account of rents and profits, or, if money be assessed in lieu of dower, to interest.

Exception, for want of proper parties, should be made by demurrer, if the defect appear on the face of the bill; if not, then by plea.

BEFORE LESESNE, CH., AT EDGEFIELD, JUNE, 1867.

This case will be sufficiently understood from the Circuit decree, and the statement contained in the judgment of the Supreme Court. The Circuit decree-is as follows :

LESESNE, Ch. The testator, James Tompkins, was appointed guardian of the plaintiff, Atticus C. Tucker, and his deceased brother, Pickens L. Tucker, in the year 1856, and gave bonds to the Commissioner of this. Court, with the defendants, Landon Tucker, J. H. Jennings and W. D. Jennings, as his sureties. He received for each of his wards the sum of 7,709.31-100 dollars, on account of their distributive shares of their father's estate. The bill also charges that, as two of the distributees of a deceased brother, Thomas L. Tucker, the said Atticus and Pickens Tucker were entitled to the further sum of 3,630 dollars, which their guardian received, or should have received, from the administrator of Thomas. The testator died in the year 1864, and the defendants, Stephen S. and John W. Tompkins, qualified as executors of his will. The bill prays that an account may be taken of the amounts for which the deceased guardian, James Tompkins, was liable to his wards, and expressing doubt as to the solvency of the estate of the said James Tompkins, and, complaining of the tardiness of the executors in the performance of their duties, prays that they may account for their actings and doings, and for the entire estate of the testator, and be required to give bond for the faithful discharge of their trust ; that the creditors be called in and enjoined ; the whole estate, real and personal, be sold for payment of the debts ; and the assets of the estate be marshalled.

The executors, in their answer, express the belief that the testa-

tor, in the year 1863, invested the funds of his wards in certain Confederate securities, which were found among his papers, and that, unless said investment be sustained, the estate will be insolvent. They also state that a tract of land, containing 500 acres, included in the appraisement as part of the estate, called the Gin House Tract, did not, in fact, belong to the testator at the time of his death, but to the defendant, John W. Tompkins, and was erroneously placed in the inventory, as was also a law office, in the village of Edgefield, which, in fact, belongs to the estate of R. W. Tompkins. They also ask that the creditors may be required to prove their claims before the Commissioner, and enjoined from suing at law.

The testator's widow, Mrs. Huldah Tompkins, in her answer, claims her right of dower in the lands of the estate.

It appears that the testator, upon receiving the funds which constituted the estates of his wards, simply charged himself with the amounts, instead of setting them apart and investing them, as it was his duty to do. He thus made himself their debtor; and even if it were proved satisfactorily that the Confederate securities mentioned were purchased as investment for them, I do not think the debts would be thereby discharged. The case is like that of Griffin vs. Bonham, in this District, and Martin vs. Marshall, at Abbeville; and I refer to my decrees in those cases for a fuller statement of my views.

The plaintiffs are entitled to the accounts they pray for, but not to the requirements of security from the executors.

The question of title, as to the Gin House tract of land, must be referred to the law Court. As to the law office, it is clear, for the reasons stated by the defendants, that it was erroneously placed in the inventory of the testator's estate.

The widow is entitled to her claim of dower.

It is ordered and decreed as follows:

1. That it be referred to the Commissioner to take an account of the amounts that were received by the testator as guardian of Atticus C. Tucker and Pickens L. Tucker, or for which he was liable to his said wards.

2. That the executors account before the Commissioner for their actings and doings as such, and for the entire estate, real and personal, of the testator, in their hands or under their control.

3. That the Commissioner call upon the creditors of the testator,

by advertisement, in the usual manner, to prove their claims by the first day of December next.

4. That a feigned issue be made up and respectfully referred to the Court of Common Pleas, wherein John W. Tompkins shall be plaintiff, and Mrs. Huldah Tompkins, devisee of testator, defendant, to try and decide the title to the tract of land mentioned in the pleadings as the Gin House Tract.

5. That a writ issue, according to the practice of this Court, to admeasure and assign to Mrs. Huldah Tompkins her dower in all the lands of which the testator was seized during her coverture with him.

The Commissioner will report to the Court on the matters hereinbefore referred to him, with leave to report any special matters; and any of the parties have leave to apply, in Chambers, at the foot of this decree, for such further orders as may be necessary or proper in the cause.

The defendants, Stephen S. Tompkins and John W. Tompkins, executors of James Tompkins, deceased, appealed, and now moved this Court for a new trial, on the following grounds:

1. The Chancellor errs, it is respectfully submitted, in deciding that the investments made by James Tompkins, guardian, in Confederate securities, for his wards, are not to be reckoned *pro tanto* in discharge of his indebtedness.

2. The decree is erroneous in so far as it orders any accounting upon the estate of Thomas L. Tucker, deceased, inasmuch as the answer of the executors sets forth that their testator never received any portion of the estate of the said Thomas L. Tucker. That the said Thomas L. died in 1863, and the testator, James Tompkins, in 1864, and that it was impossible to collect the moneys in the hands of the administrator of said Thomas L., owing to the stay laws of the State then in force. And that the said administrator was perfectly solvent.

3. The Chancellor errs in supposing that "the testator, upon receiving the funds, which constituted the estates of his wards, simply charged himself with the amounts, instead of setting them apart and investing them, as it was his duty to do." No such disposition of the funds appears either from the answers or the evidence. But, in point of fact, the contrary.

4. It is respectfully submitted that the decisions as to Confederate investments, in Bonham *ads.* Griffin, and Martin *vs.* Marshall, cited

by the Chancellor in confirmation of this present decree, have not, and can not, be sustained by the Court of Appeals of this State—but, on the contrary, have been reversed.

5. The Chancellor errs in omitting to notice the statement of the executors, as also the argument of counsel in that regard, that R. Augustus Tompkins, a son of the testator, had not been made a party to the bill; and that, admitting he had been such party, his death, before the hearing of the cause, necessitated a bill of revivor.

6. It is respectfully submitted that, under the decisions of this State, the widow of testator is not only entitled to dower in the lands of her husband, but, also, to a share in the rents and profits thereof since his death; and that the Chancellor erred in omitting so to order in his decree.

*Bacon,* for appellants.

*Abney & Wright,* contra.

May 8, 1869.    The opinion of the Court was delivered by

Moses, C. J.    The bill was filed by Tillman L. Clark, administrator of Pickens L. Tucker, and Atticus C. Tucker.

It alleges the appointment, in 1856, of James Tompkins as guardian of the said Pickens L. and Atticus C., his entering into the usual bonds, with Landon Tucker, J. H. Jennings and W. D. Jennings as his sureties, and the receipt by the said guardian of $7,709.31 for each of the said wards, as their several distributive shares in the estate of their deceased father; that they were, also, entitled to a further sum of $3,630, as distributees of a deceased brother, Thomas L. Tucker, which the said guardian received, or should have received, from his administrator; that the testator died in 1864, leaving a large real and personal estate, and the defendants, T. S. Tompkins and J. W. Tompkins, qualified as executors of his will.

It prays for an account, by the executors, of the actings and doings of their testator as guardian; and, expressing doubts as to the solvency of his estate, asks that the executors be required to account, the creditors called in, the estate marshalled, and the sale of the whole estate for the payment of debts.

The executors, in their answers, express the belief that the testator, in 1863, invested the funds of his wards in Confederate securities, found among his papers, and, unless the investment be sustained, the estate will prove insolvent.   They ask that the creditors

be enjoined from suing at law, and required to prove their claims in this Court.

The Chancellor made his decree, and it will only be necessary to notice so much of it as may be involved in the questions presented by the grounds of appeal.

The first and third of these submit error in deciding that the investments made by the guardian in Confederate securities for his wards are not to be taken *pro tanto* in discharge of his indebtedness.

This assumes a higher position for the guardian than was conceded to him by the Chancellor. Had he, in good faith, with funds in hand, made an investment for his wards, which was lost from circumstances beyond his control, he might have submitted a claim to the Court for an extension, in his behalf, of the principles which govern it, in passing on the conduct of those who occupy fiduciary relations. All reference to these is precluded by the fact that no investment was ever made.

Apart from the mere belief of the sons, the executors, and the widow, that the Confederate securities in the possession of the testator at the time of his death were held by him for his wards, there is not a tittle of proof that he in any way invested the money which he received for his wards, in 1856, into any other representative of value.

The mere circumstance that Confederate securities, amounting to a few thousand dollars, and Treasury notes, to some $15,000 or $16,000, were found among his assets, in no way leads to a conclusion that he had bought and held the first for the infants. Dying in the year 1864, was it at all extraordinary that a man of his large estate, great prudence, energy and thrift, should have left on hand that amount in the only currency existing in the country?

We can perceive no reason for which to differ from the Chancellor in the conclusion to which he arrived in this regard.

We do not, however, consider that, in the accounting to be had, the estate of the guardian is to be charged with the amount of the distributive shares in the estate of the brother, Thomas L. Tucker, to which each of the wards was entitled. He died in 1863, and the testator in 1864. Apart from the very short period intervening between their deaths, the Courts were closed, and the condition of the country rendered impossible any resort to the tribunals of the State for remedies in civil causes. Nothing has been lost by any want of action on the part of the testator. The administrator of T. L. Tucker is still liable to account to the brothers, and they

are now at liberty, without hindrance, to proceed against him. It has not been shown, even if necessary for the relief of the testator in this behalf, that anything has been lost to the wards by the mere forbearance of action on the part of the testator.

The claim of the widow to dower is allowed by the decree, and a writ for its admeasurement ordered. On its assignment, she is entitled to an account for rents and profits from the time when her right to it attached, or to interest, if a sum of money is assessed in lieu of it.—*Keith* vs. *Napier*, Bail. Eq., 64.

It has been submitted to this Court that its action should be stayed, because all the parties proper to the bill are not before it.

The bill was filed, primarily, by the plaintiffs against the executors of the testator for an account as guardian. To insure, probably, relief by the least circuitous mode, the sureties to the guardianship bonds were made parties defendant, as were, also, the devisees and legatees having an interest under the will. An order to amend the bill appears to have been passed by the Commissioner, for the purpose of preferring a claim to an account of some alleged interest in a mine and tannery, that the executors might give bond for the faithful administration of their trust or relinquish it, and to account for the rents and profits of the estate of the testator since his death. To the original bill, as has been said, all the devisees and legatees were parties, and, without holding that it is not necessary, under any amended bill, to serve anew with process to answer, all the parties defendants to the original bill, we do not think that the failure to serve R. Augustus Tompkins, (one of the devisees,) under the amended bill, should arrest all action in these proceedings.

If the objection could prevail, it was not taken in the Court below in the form in which it should have been presented.

Exception for want of proper parties must be by demurrer, if the omission appears on the face of the pleadings; if not, by plea. When the defect is thus established, the Court will suspend judgment until all the proper parties are before it.—*Neely* vs. *Anderson*, 2 Strob. Eq., 262.

As observed, however, by Chancellor Dargan, in that case, the rule is subject to exception. It was adopted for convenience, "and conducive to the due and proper administration of justice, and would not be regarded as inflexible where its application would be absurd, impracticable, or lead to inconvenient delay."

While preserving and protecting all proper rights, we must be

careful that this is not attended with unnecessary protraction, and, therefore, should not be astute in an exploration of difficulties with which to impede the course of justice.

We feel less hesitation in not favoring the objection taken here, inasmuch as the said R. Augustr Tompkins and the widow have both died since the decree, and further progress in the Court below will be suspended until their representatives and distributees are made parties by proper proceedings, to do which leave is now given.

It is ordered that the decree of the Chancellor, explained by the views herein declared, be affirmed.

*Willard,* A. J., concurred.